CARMEN VÁZQUEZ, Plaintiff and Appellee, *v.* EMILIO ZEDA and TERESA ZEDA MARTÍNEZ, Defendants and Appellants.

No. 8211.   Argued April 18, 1941.—Decided April 30, 1941.

*J. Valldejuly Rodríguez* for appellants.   *Isaías Crespo* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The defendant Emilio Zeda Martínez and his former wife, plaintiff Carmen Vázquez, were owners of community property consisting of an undivided interest of 7/8 of a house and lot in Arecibo.   The plaintiff alleges that the defendant Zeda, while still her husband, induced her to execute a deed of power of attorney in his favor, authorizing him to sell said property in the name of both; that instead of a power of attorney, defendant had a deed drafted by which both

spouses appear selling the undivided interest to the other defendant, Teresa Zeda Martínez, sister of Emilio, "for a simulated price, which neither in whole or in part, nor in any form, was paid by the defendant"; that plaintiff signed the deed relying on the confidence which she placed on her husband and his sister; that it was not plaintiff's intention to sell the property and that if she did, it was due to the false simulations of both defendants; that after having signed the deed, plaintiff, following instructions of her husband, left for the United States, and that her husband, taking advantage of her absence, filed a divorce action against her, in which he alleged "that there was no community property", defrauding plaintiff's good faith. Plaintiff asks that the nullity of said deed be adjudged and the cancellation of its record in the registry be ordered.

The defendants answered, denying all the facts averred in the complaint and alleged that said facts were insufficient to state a cause of action against them.

The case was argued and submitted on October 5, 1939. On the 13th, plaintiff moved the court to reopen the case and to be permitted to offer in evidence a certificate of the registrar of property stating that on the same day that the deed whose nullity is requested was executed, that is, on October 4, 1937, the defendant, Teresa Zeda, executed a mortgage-deed in guaranty of a mortgage bond to bearer for $6,000. The lower court, relying on the decision of *Succs. de L. Villamil & Co. S. en C.* v. *Quintana,* 45 P.R.R. 898, ordered the reopening of the case and admitted the certificate, notwithstanding the opposition of the defendants.

On November 15, 1939, the lower court entered judgment adjudging the alleged sale void and inexistent "as to the rights of the plaintiff, that is, as to the half of 7/8 of the value of the property which is described in the complaint" and ordered the cancellation of the record as to the said half. Both defendants appealed and charged that the lower court committed error in giving judgment for the plaintiff

without the existence of fraud having been proved; in ordering the liquidation of the conjugal partnership, which was not requested by the plaintiff; in annulling a notarial deed with weak evidence and against the presumption of its legality, and in rendering a judgment which is not upheld by the evidence.

■■ We shall examine the evidence. Plaintiff offered at first a stipulation wherein the parties agreed that if the plaintiff were present, she would testify as follows:

"That she is divorced from Emilio Zeda; that on October 4, 1937, she signed a deed which she did not read, nor which was read to her, before the Notary Aníbal Boneta; that she did not know the purpose of the said deed; that her husband Emilio Zeda told her that it was a power of attorney authorizing him to sell or mortgage the property described in the complaint; that she did not receive any money from Emilio Zeda in payment of the property; that she has never sold any property to Teresa Zeda and much less the property described in the complaint; that she left for the United States on October 7, 1937, that is, three or four days after the execution of the said deed, because her husband deceived her, offering to sell the house, and with the product thereof, to go with her to New York and establish a business or a retail grocery in that city; that the said deed was executed in the small café of Emilio Zeda and there were only present the attorney-at-law Boneta, Emilio Zeda, Carmen Vázquez and Candita Santiago; that the house has always been and is managed by Emilio Zeda as owner."

Candita Santiago, who is mentioned in the foregoing stipulation as present at the time of signing the deed, testified that one day at the beginning of October, while she was going with the plaintiff toward the cemetery, they met defendant Emilio Zeda on the way and he called them and invited them to come to his café, located behind the Orphanage, in Salsipuedes; that in the small coffee shop, in a booth, there was Aníbal Boneta, the Notary Public, with some papers; that Emilio asked Carmen Vázquez "to sign, granting him a power of attorney to sell the house, because he wanted to go to the United States to establish a business

there; that she hesitated and asked Aníbal Boneta if she would be harmed, and Boneta said no, that it was only a power of attorney to sell, that she should sign, and he insisted on her signing; that Carmen Vázquez did not read the deed, because when she started to read it, Zeda told her: "Go ahead and sign; it is to sell the house; I want to get through selling this to go and sail with you"; that no one read the deed; that the only people present there were Boneta, Emilio Zeda, Carmen Vázquez and the witness; that as far as she knows no money payment was made; that Carmen Vázquez signed because Emilio Zeda told her that it was a power of attorney to sell. On cross examination, she ratified her testimony that when Carmen tried to read the deed, Zeda insisted saying: "Go ahead, sign the power of attorney to sell", and that she signed believing it was a power of attorney and not a sale.

Andrés Vázquez, brother germane of the plaintiff, testified: that when he knew through his sister that she had signed a deed for her husband, he went to see Emilio Zeda and asked him to show him the papers and that Zeda told him: "Don't worry, it is a power of attorney which she gave me to sell the house and this small café and to collect some money from a mortgage, and later I have to go to the States;" that he insisted on seeing the documents, in order to read them, and Zeda told him that his lawyer had them; that Francisco and José Ernesto Tirado were present in that conversation, whom he invited in order that they could hear what he was going to talk over with Zeda; that Zeda told him that the house had not been sold yet; that this was said after his sister had signed the deed in the small café; that his sister sailed for the United States on October 7, 1937, and he had to pay for her ticket; that he was not able to see the document because Boneta was in a cockfight.

José Ernesto Tirado, witness for the plaintiff, corroborated the testimony of Andrés Vázquez as to the conversation between the latter and defendant Emilio Zeda.

The defendants offered in evidence a copy of the deed in controversy, the second paragraph of which reads as follows:

"Second: The spouses of the first part, sell, transfer, waive and convey to the second party, Mrs. Teresa Zeda Martínez, their joint ownership of the real property herein described, with all that is annexed and permanent thereto, with its use and servitudes, for the agreed price of $2,000, *which amount the vendors confess having received in this act in legal tender from the hands of the buyer,* for which they acknowledge receipt in due form." (Italics supplied.)

And to uphold the validity of the deed which was impeached, the defendants offered as their only evidence the testimony of Narciso Batista, whose name appears in the deed as witness of its execution. He testified that he knows the plaintiff and the defendants; that on October 4, 1937, he saw the first woman who is around, in the office of Aníbal Boneta; that he also saw there Juan Rodríguez, a gentleman who bought a house from him, and myself; *that he does not remember having seen Carmen Vázquez there;* that what they were doing there was a deed or sale, I don't remember well; that Boneta read it, but that he did not pay attention and signed it, Juan Rodríguez signing also; that all this took place in the office of Boneta; that Carmen Vázquez might have been there, but he does not know if she was there.

After considering and weighing all the evidence, the lower court arrived at the following conclusions:

(a) That Carmen Vázquez, the plaintiff, did not give her express consent for a true contract of sale.

(b) That although it is true that the plaintiff signed the deed, she did not have the intention to consent to a free alienation of the joint ownership.

(c) That the defendant Emilio Zeda had the purpose to prejudice his wife, to avoid her claiming the community property after the divorce.

(d) That the delivery of the $2,000 was not effective and that the deed was only a sham instrument in favor of

his sister, to avoid the liquidation of the community property when the divorce was granted.

The above-mentioned conclusions are fully justified by the facts and circumstances which the evidence has set forth. It is true that a legal presumption exists in favor of the validity of the public deed which has been impeached. However, that presumption is not conclusive and may be challenged by means of evidence showing that some of the requisites necessary for its validity were not fulfilled in its execution or that the facts therein mentioned are contrary to the truth.

If we consider the fact that a brother and sister relationship existed between the defendants, that the deed was executed before the plaintiff sailed for the United States; that plaintiff's brother was the one who paid for her ticket; that a short time after the plaintiff sailed the defendant filed a divorce action; that at the time when the deed was signed in the small café of the defendant, only the notary, the defendant Zeda, the plaintiff and her friend Candita Santiago were present, without it appearing that the alleged buyer and the witnesses to the deed were present in that act; that on the same day in which she acquired the property for the price of $2,000, the buyer Teresa Zeda mortgaged it in guaranty of a promissory note for $6,000; that the property in controversy had been previously mortgaged for $8,000; and, finally, that the notary who authorized the deed and the defendants, all of them, were residents of Arecibo, who could have appeared to uphold the validity of the impeached deed, refrained from doing so, from which the legal presumption arises that such evidence was voluntarily suppressed because if offered it would have been adverse to defendant, (Section 464, Code of Civil Procedure, 1933 Ed.) the conclusion is inevitable that the deed of October 4, 1937, was drafted and executed with the fraudulent and deliberate purpose of depriving plaintiff of her property, and that

plaintiff was persuaded to sign it by the false and fraudulent representations of the defendant, who made her believe that what she signed was a power of attorney and not a deed of sale.

The defendants-appellants call our attention to the statement of the lower court in denying defendants' motion for nonsuit, filed at the termination of plaintiff's evidence. The court said:

"Really, the evidence is weak, but there being evidence up to this time that the plaintiff was taken to some place with a purpose, that is, to execute a power of attorney, and that later it turned out to be a sale, and it further appearing that at the time of signing no money was delivered as consideration for the contract which was being entered into, and that the contract was not read either, *a thing which up to this time we have to accept as proven, unless proof to the contrary is presented*, the court understands that it is preferable, before issuing an order, to hear defendant's evidence, in order to be in a better position to do justice." (Italics supplied.)

It is evident that the trial judge considered that there was evidence which, unless proof to the contrary was presented, was sufficient to establish three essential facts: (a) the deceit suffered by plaintiff, that is, the lack of consent; (b) not having paid the price of the sale at the time of signing, that is, lack of consideration; and (c) not having read the deed before it was executed. The trial judge, when he classified the evidence as weak, had, without doubt, in mind that all the evidence presented by plaintiff could have been easily destroyed with the testimony of the notary who authorized the deed, and with the testimony of the defendants, to prove when, how, and in what form the payment of the price of the alleged sale was verified. The defendants did nothing to destroy the evidence offered by plaintiff to controvert the presumption of the validity of the deed impeached, and that evidence having been believed by the trial court, it is our duty to uphold its findings.

The averment of the complaint that the alleged sale was made "for a simulated price which neither in whole or in part, nor in any other form, was paid by the defendant", is upheld by the evidence. The deed, in the way it is drafted (paragraph 2, *supra*) does not establish any presumption as to the payment of the price. On the contrary, the presumption which arises from the facts and from the statement in the second paragraph of the deed, is that the latter was executed without consideration. And this presumption, we repeat, has not been controverted. *Santini Fertilizer Co.* v. *Burgos,* 34 P.R.R. 830; Section 40, Mortgage Law; Manresa, vol. 8, page 755. The notary public does not attest that the price was delivered in his presence. He attests only that the vendors confessed that they had received it at that moment. Against this alleged confession there is all the evidence of the plaintiff and the eloquent silence of the only witness of the defendants, who, notwithstanding that he was a witness to the deed, was asked nothing as regards the delivery of the price.

The lower court, taking into account that Zeda and the plaintiff are divorced, adjudged the nullity of the sale only as to the rights of the plaintiff. This is an error that can be and should be corrected. If the deed is false and simulated as to plaintiff's rights, it must also be false and simulated as to everything set forth in it. *Falsus in uno falsus in omnibus.*

The judgment appealed from must be modified, to declare null and inexistent in its entirety the deed No. 86 of October 4, 1937, executed before the Notary Aníbal Boneta, and cancelling the whole record that was taken in the Registry of Property; and so modified, it should be affirmed, with the holding as to costs and attorney's fees.